UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DIANE SCHROEDER and REBECCA SCHROEDER,
individually and on behalf of all other
similarly situated individuals

        Plaintiff,

  v.                                           Case No. 12-C-0137

HUMANA INC. and
HUMANA INSURANCE COMPANY,

        Defendants.

**DECISION AND ORDER GRANTING CONDITIONAL CERTIFICATION
AND APPROVING NOTICE TO POTENTIAL FAIR LABOR
STANDARDS ACT PLAINTIFFS**

Plaintiffs Diane Schroeder and Rebecca Schroeder are former employees of Defendants Humana, Inc. and Humana Insurance Company (collectively, "Humana"). Humana is a health care company that offers and sells a wide range of insurance products and health and wellness services to insured customers (known as members) across the country. Plaintiffs worked as Clinical Nurse Advisors (CNAs) for Humana in its Green Bay call center. Plaintiffs allege that they were not properly paid overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., (FLSA). Humana contends that plaintiffs were exempt employees and therefore not entitled to overtime under the FLSA. Before me now is plaintiffs' motion for conditional class certification and court-authorized notice pursuant to FLSA § 216(b). Also before me is plaintiffs' motion for leave to supplement the record with new deposition testimony that plaintiff asserts should be considered by the Court.

**BACKGROUND**

Plaintiffs seek to certify a class of nurses who work as CNAs for Humana. (Compl. ¶¶ 10-12.) While CNA is a broad title (Humana calls it a "role profile"), plaintiffs focus their proposed class to those CNAs who primarily perform one of three utilization management functions at Humana's nationwide call centers.[1] These utilization management functions include: (1) preauthorization (or prospective) review, (2) retrospective claims review, and (3) inpatient review. (Weizenicker Dep. at 84:5-8.) Utilization management review is an umbrella term for the process by which an insurance company evaluates the medical necessity, appropriateness, and efficiency of the use of health care services, procedures, and facilities under the health plans it offers to its members. (Weizenicker Decl. at ¶ 5.) Humana's utilization management process includes determining whether a requested authorization for health benefits or services is covered under the member's insurance plan; it also includes case management, discharge and aftercare planning, and retrospective review.

Plaintiffs allege that regardless of where they work, CNAs primarily performing prospective review, retrospective review, and certain inpatient review functions all operate under a uniform "role profile" and share "assignment profiles." (Pl. Br. at 4.) Plaintiffs contend that these CNAs all review clinical information provided by healthcare providers and apply that information to determine whether to approve authorization requests based on certain criteria and guidelines. (Weizenicker Dep. at 53:11-17; 60:7-20; D. Schroeder Decl. ¶ 4; R. Schroeder Decl. ¶ 4; Ahrens Decl. ¶ 4; Klemp Decl. ¶ 4; Phillips Decl. ¶ 4.) Plaintiffs argue that all CNAs performing

---

[1] Humana operates call centers in Green Bay, Wisconsin; Louisville, Kentucky; San Antonio, Texas; and New Orleans, Louisiana. (Weizenicker Decl. ¶ 12.) CNAs also work out of hospitals and their own homes across the country. (*Id.*)

2

prospective review, retrospective review, and certain inpatient review functions share similar job duties and responsibilities, are all compensated in the same manner, and are all subject to similar productivity standards and job expectations. As a result, plaintiffs allege these nurses are uniformly misclassified as exempt from the FLSA's overtime requirements.

A.   **Prospective and Retrospective Review Nurses**

Nurses assigned to conduct prospective reviews assess whether certain outpatient medical procedures requested by an insured member or health care provider are medically appropriate and covered by the member's insurance plan. (Weizenicker Decl. ¶ 8.) Prospective review nurses make this determination by comparing clinical information provided by the healthcare provider with the appropriate medical guidelines and the member's insurance policy. (*Id.* ¶ 18.) The nurse may approve claims that are medically necessary based on this analysis. (*Id.* ¶ 19.) But, the nurse cannot deny a claim on his or her own; instead, the nurse must refer the case to the Regional Medical Director, a licensed physician who then makes the final decision.[2] (*Id.*)

Retrospective claims review nurses essentially perform these same functions, except, as the name implies, they perform their review after a procedure has already been performed. (Weizenicker Decl. ¶ 20, 22; Weizenicker Dep. at 20:13-20.) Retrospective review nurses analyze the member's clinical information and insurance policy along with medical guidelines to determine whether the procedure was medically necessary and will be covered by Humana. (*Id.*) Like prospective review nurses, they cannot deny claims on their own.

---

[2] A nurse may deny a claim without consulting a physician, however, if a member's insurance policy does not cover a procedure at all. (Weizenicker Decl. ¶ 19.)

Prospective and retrospective review nurses work primarily from Humana call centers and do not work in or travel to hospitals or medical facilities. (Weizenicker Decl. ¶ 14.) Like all CNAs, these nurses receive work assignments from a "pend queue," an automated online system, and are assigned to teams based on their assigned queue. (Weizenicker Dep. at 43, 46, 48; D. Schroeder Decl. ¶¶ 15-16; R. Schroeder Decl. ¶¶ 15-16; Ahrens Decl. ¶¶ 15-16; Klemp Decl. ¶¶ 15-16; Phillips Decl. ¶¶ 15-16.) Plaintiffs also assert that the nurses conduct utilization reviews by using similar computer systems, workflows, job aids, processes, and procedures. (Weizenicker Dep. at 33, 37-39; D. Schroeder Decl. ¶¶ 7-8; R. Schroeder Decl. ¶¶ 7-8; Ahrens Decl. ¶¶ 7-8; Klemp Decl. ¶¶ 7-8; Phillips Decl. ¶¶ 7-8.) They are expected to complete about two reviews per hour, and are subject to similar audit standards and evaluation criteria. (Weizenicker Dep. at 48, 77-78; Weizenicker Decl. ¶ 25.) The nurses primarily communicate with healthcare providers via telephone, and Humana seeks individuals with call center experience, trains the nurses on proper phone etiquette, and records all of the nurse's telephone calls. (Weizenicker Decl. ¶ 15; Weizenicker Dep. at 88.)

**B.    Inpatient Review Nurses**

As to the inpatient review roles, plaintiffs argue that while not all inpatient review nurses should be included in the notice,[3] nurses who perform "primarily utilization management review functions" should be included. (Pl. Reply Br. at 8.) According to plaintiffs, these positions include

---

[3] Humana lists several different roles that inpatient review nurses perform. (Def. Opp'n Br. at 9.) According to Humana, these nurses are organized into different teams. First, the Commercial Case Management and Concurrent Review team includes nurses assigned to one of three "roles": acute, transitional, or complex case managers. (*Id.* at 9-14.) Second, the Senior Products team (which serves seniors covered by Humana Medicare Advantage policies) includes nurses assigned to one of four "work streams": admission to observation, concurrent review with discharge planning, post-discharge assessment, and case management. (*Id.* at 14-19.)

4

nurses classified as "acute case managers" and nurses in inpatient review roles that "conduct concurrent reviews with discharge planning." Plaintiff argues that these roles are similar to prospective and retrospective review nurses' roles, although these nurses review inpatient, as opposed to outpatient, procedures. (Pl. Reply Br. at 2.)

    1.    <u>Acute Case Managers</u>

Acute case managers are assigned to insured members when they are admitted to hospitals or inpatient facilities. (Taylor Decl. at ¶ 17.) Acute case managers work either in a Humana regional office building or in their own homes. (*Id.* at ¶ 19.) Some travel to hospitals where their members are located. (*Id.*) Acute case managers perform initial assessments of their assigned members' physical, sociological, and psychological needs through an on-site or telephone interview and also assess the member's medical record. (*Id.* at ¶ 10.) Acute case managers also analyze members' clinical information, confer with the Humana Medical Director and medical providers, and consult Milliman guidelines[4] and medical information to approve hospital stays and to determine if the member is receiving the right level of care. (*Id.* at ¶ 13.) An initial assessment typically approves a short hospital stay, and a follow-up assessment and review process is conducted after a period of time. (*Id.*) In addition, acute case managers may also consider alternate levels of care. (*Id.*) Plaintiffs allege that acute case managers, like all CNAs, also receive assignments from the automated pend queue, are assigned to teams based on their queues, are subject to similar evaluation criteria. (Weizenicker Dep. at 43, 46, 48; Weizenicker Rule 30(b)(6) Dep. at 41-43.)

---

[4] According to Humana, the Milliman guidelines are "an industry standard set of evidence-based clinical guidelines that doctors and nurses may consult to help make decisions about the care of individual patients. (Def. Opp'n Br. at 11 (citing Taylor Decl. ¶ 14).)

5

Humana contends that acute care managers' roles differ significantly from prospective and retrospective review nurses' roles. Humana notes that acute case managers interact with and follow members through hospital stays, conduct member assessments, and receive motivational interview training. (Def. Opp'n Br. at 10-11; Weizenicker Decl. ¶ 30.) In addition, Humana asserts that consultation with Milliman guidelines is "vastly different than consultation with the guidelines used by prospective and retrospective review nurses." (Def. Opp'n Br. at 11.) Acute case managers are allowed to make care decisions deviating from the Milliman guidelines according to their clinical judgment, and do so in nearly half of the cases. (Taylor Decl. ¶ 14.) Acute case managers carry a workload of between 15 and 30 cases at a given time, and are not subject to productivity metrics based on how quickly they move on from a case because nurses stay with a member until they are no longer needed. (Taylor Decl. ¶ 25.) Finally, Humana asserts that acute case managers are also subject to different licensure requirements. While acute case managers perform most or all of their duties under their own nursing licenses, prospective and retrospective review nurses perform work under a blanket utilization review license that Humana obtains for the company.[5] (Weizenicker Decl. ¶ 34.)

2. <u>Concurrent Review with Discharge Planning</u>

Nurses assigned to concurrent review with discharge planning functions (concurrent review nurses)[6] ensure that members assigned to inpatient facilities are receiving medically necessary

---

[5] Acute case managers must be Registered Nurses (RNs). Prospective and retrospective review nurses may hold an RN license or a Licensed Practical Nurse (LPN) license. (Weizenicker Dep. at 58:22-59:3.) A minority of prospective and retrospective nurses are LPNs. (*Id.*)

[6] Under the role of "concurrent review with discharge planning" there are actually three specific positions depending on the type of facility or care being reviewed: inpatient managers, skilled nursing facility nurses, and acute inpatient rehabilitation and long term acute care facility nurses.

6

treatment. These nurses also review the length of inpatient stays and plan for safe and effective discharge. (Akin Decl. ¶ 12.) Like acute case managers, concurrent review nurses analyze members' clinical information, confer with the Humana Medical Director and medical providers, and consult Milliman guidelines and medical information to determine if the member is receiving the right level of care and to approve hospital stays. (Akin Decl. ¶ 14.) Typically, concurrent review nurses work from a Humana office or from their home, and are assigned between 10 and 50 cases at a time depending on the type of members they are assigned to. (*Id.* at ¶ 16.) Concurrent review nurses are also responsible for continuous discharge planning for their assigned members. (Akin Decl. ¶ 20.) This process involves analyzing member's post-discharge needs, including follow-up appointments, in-home care, durable medical equipment, education, disease management, and community resources. (*Id.*) Humana also contends that these nurses' duties differ significantly from prospective and retrospective nurses' duties. (Def. Opp'n at 17.)

**C.     The Named Plaintiffs**

Rebecca Schroeder was employed by Humana as a CNA from October 2010 to March 2012. (R. Schroeder Decl. ¶ 3.) She worked in Humana's Green Bay office, and was assigned to conduct prospective reviews. (*Id.* ¶ 5). She also assisted with retrospective reviews as necessary. (R. Schroeder Dep. 57:9-11.) Likewise, Diane Schroeder was employed by Humana as a CNA from May to November 2011. (D. Schroeder Decl. ¶ 3.) She performed retrospective claims reviews. (*Id.* ¶ 5.) Neither named plaintiff conducted inpatient claims reviews. In addition, plaintiffs have submitted declarations from three additional CNAs employed by Humana, at least one of which conducted inpatient reviews. (*See* Ahrens Decl.; Klemp Decl.; Phillips Decl.)

7

## CONDITIONAL CERTIFICATION STANDARD

The FLSA permits collective action "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Employees or former employees must give their consent in writing to become a party to a collective action brought pursuant to § 216(b). Therefore, unlike a typical class action suit under Fed. R. Civ. P. 23, where an unwilling plaintiff must "opt out" of the class, the FLSA requires employees or former employees to "opt in" to the class. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

District courts may, in their discretion, facilitate notice to potential plaintiffs to a FLSA collective action, to implement this "opt in" procedure. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods*, 686 F.2d at 580; *DeKeyser v. Thyssenkrupp Waupaca Inc.*, No. 08-C-488, 2008 WL 5263750, *2 (E.D. Wis. Dec. 18, 2008). "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). In order to determine whether the representative plaintiffs are "similarly situated" to potential opt-in plaintiffs, this Court follows a two-step certification approach. *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, *3, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008).

First, the court must determine whether to conditionally certify the class by examining whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. *Id.* at *3. At the first stage, the plaintiff must make "at least a modest factual showing that such collective action is appropriate." *Id.* at *4. *See also, e.g., Brabazon v.*

8

*Aurora Health Care, Inc.*, No. 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011); *Nicholson v. UTi Worldwide, Inc.*, No. 3:09-CV-722, 2011 WL 250563, at *2 (S.D. Ill. Jan. 26, 2011); *Howard v. Securitas Security Servs., USA Inc.*, No. 08-C-2746, 2009 WL 140126, at *5 (N.D. Ill. Jan 20, 2009); *Austin*, 232 F.R.D. at 605. Plaintiffs may present factual support in the form of affidavits, declarations, deposition testimony, or other documents in order to demonstrate some "factual nexus between the plaintiff[s] and the proposed class or a common policy that affects all the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). It is a lenient standard, but the conditional certification stage is not a "mere formality." *Adair*, 2008 WL 4224360, at *3. This is because "a plaintiff's discovery demands upon conditional certification may impose a 'tremendous financial burden to the employer'" and therefore, courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset. *Id.* at *4 (quoting *Woods*, 686 F.2d at 581).

If the class is conditionally certified, notice may be sent to other potential class members and discovery may proceed. *Adair*, 2008 WL 4224360, at *3. At step two, typically on a defendant's motion for decertification, the court must determine whether plaintiffs who have opted in are, in fact, similarly situated. *Brabazon*, 2011 WL 1131097, at *2. At the second stage, the court will assess whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. *Hoffmann-La Roche*, 493 U.S. at 170.

**ANALYSIS**

**A.    Motion to Supplement the Record**

At the outset, it is necessary to resolve plaintiffs' motion for leave to supplement the record with "additional undisputed facts." (Pl. Supp. Br. at 1.)  Plaintiffs seek to include additional

9

deposition testimony from another of Humana's corporate designees taken after plaintiffs filed their motion for conditional certification and submitted their supporting briefs. Humana opposes the motion to supplement, arguing that these facts are properly considered at the second stage of the certification process because allowing plaintiffs to continually supplement its motion for conditional certification defeats the purpose of the two-step process. Humana also contends that allowing plaintiffs to supplement their motion would create a "moving target" for Humana to respond to and would contribute to the inefficient administration of justice. Plaintiffs have already submitted multiple declarations and have taken several depositions, including depositions of Humana's corporate representatives. Because these additional facts are not necessary to decide the instant motion, and because allowing plaintiffs' motion would cause unreasonable delay, plaintiffs' motion will be denied.

B.     **Conditional Certification**

Here, plaintiffs are at the first step of the certification process. Because plaintiffs argue that they and others have been misclassified as exempt, plaintiffs must show that potential class members "shared sufficiently similar duties and levels of discretion and independent judgment so as to make it possible to determine collectively whether defendant classified them improperly." *Ruiz v. Serco, Inc.*, No. 10-cv-394, WL 7138732, at *4 (W.D. Wis. Aug. 5, 2011). At this stage, Humana does not contest that conditional certification is appropriate, but instead challenges the scope of the notice to be provided to potential plaintiffs. Humana contends that notice should be extended only to prospective and retrospective review nurses who worked in Humana's Green Bay office and worked more than 40 hours in a week without receiving overtime compensation.

10

### 1. Scope of Notice to Protective and Retrospective Review Nurses

The parties do not dispute that prospective and retrospective review nurses should be included in the definition of the conditional class to whom notice should be provided. However, Humana contends that certification should be limited to only those prospective and retrospective review nurses who work at Humana's Green Bay location. Humana argues that plaintiffs have not offered any evidence that any prospective or retrospective review nurses working outside of Green Bay actually worked more than 40 hours per week. Therefore, Humana asserts that the conditionally certified class can only include nurses who work or worked out of Humana's Green Bay office.

Plaintiffs respond that prospective and retrospective review nurses share similar job duties company-wide, and regardless of the location where they work, certification is proper beyond the Green Bay location. Plaintiffs also point to the fact that regardless of location, these nurses perform similar functions, follow the same processes, are paid in the same manner, and are uniformly classified as exempt. (Pl. Reply Br. at 5 (citing cases).) In addition, Plaintiffs argue that proving whether putative class members actually worked more than 40 hours per week is not appropriate at the conditional certification stage. *See Greenwald v. Phillips Home Furnishings Inc.*, No. 4:08CV1128, 2009 WL 259744, at *6 (E.D. Mo. Feb. 3, 2009). Finally, Plaintiffs argue that limiting putative plaintiffs to those who actually worked more than 40 hours in a workweek can easily be accomplished through the notice.

Plaintiffs have satisfied their modest factual burden here. Humana's corporate representative, Betty J. Weizenicker, explained that all CNAs share the same job functions and responsibilities regardless of where they are located or whether they hold RN or LPN licenses. (See Weizenicker Dep. at 60:16-20, 84:1-4; Weizenicker 30(b)(6) at 12:25, 13:1-16.) Moreover, all

11

nurses receive the same training upon hire. (Weizenicker Dep. at 29-30, 39-41.) All nurses use the same computer systems and software (Weizenicker Dep. at 37-38), and prospective and retrospective nurses are held to standardized performance criteria because they share the same role profile and role assignment. (Weizenicker Rule 30(b)(6) Dep. at 9-10; 12-13.) In addition, regardless of location, all CNAs, including retrospective and prospective review nurses, are paid a salary and deemed exempt from overtime compensation. (Schinktgen Dep. at 31.)

Plaintiffs have asserted sufficient evidence that indicates that the retrospective and prospective review nurse roles conform to uniform, company-wide standards and policies. As a result, even though plaintiffs physically worked in the Green Bay office, there is no reason to limit notice to that location. If plaintiffs in Green Bay were misclassified as exempt, then nurses holding the same positions company-wide were also likely misclassified because they were all subject to the same exemption policy based on their similar role profiles, training, productivity requirements, and evaluation standards. *See Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 631 (W.D. Wis. 2009) ("Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations."). Furthermore, as plaintiffs suggest, the notice may include language limiting the scope of eligible opt-in plaintiffs to those that actually worked more than 40 hours in any workweek while employed by Humana.

    2.    <u>Inclusion of Inpatient Review Nurses</u>

Humana also argues that the named plaintiffs–who perform prospective and retrospective reviews–are not similarly situated with inpatient review nurses, and therefore, notice should not

12

extend to these nurses. Humana contends that (1) inpatient nurses perform different duties; (2) inpatient nurses have different goals in their jobs than prospective and retrospective review nurses; (3) many inpatient nurses work in different locations than the plaintiffs; (4) many inpatient review nurses are required to have different licensure than the prospective and retrospective review nurses must have; (5) inpatient nurses are managed differently and measured against different standards than the plaintiffs and prospective/retrospective review nurses; (6) prospective and retrospective review nurses are subject to different performance metrics and workloads; and (7) many inpatient nurses use different guidelines in making member care decisions. Humana argues that substantial differences exist between inpatient review nurses and prospective and retrospective review nurses, and therefore, there will not be a common answer regarding the exempt status of each. (Def. Br. in Opposition at 28.)

Plaintiffs respond that while not all inpatient review nurses should be included, those performing "primarily utilization management review functions," including acute case managers and concurrent review nurses should be included. (Pl. Reply Br. at 1.) Plaintiff argues that these roles are similar to prospective and retrospective review roles because their primary job is to perform a utilization management review function by comparing the member's clinical information to guidelines in order to make determinations about whether a requested authorization for benefits or services is covered under the member's insurance plan. (Pl. Reply Br. at 2.) Plaintiff also points to the fact that prospective reviews, retrospective reviews, and inpatient review all fall under the umbrella of "utilization management" services within Humana. (Pl. Reply Br. at 7-9.) Among other things, plaintiffs contend that inpatient review nurses who perform the roles of an acute case manager and concurrent review nurse hold the same "role profile" (CNA), have similar "assignment

13

profiles" or job descriptions, perform similar job duties and responsibilities (providing day-to-day utilization management services by comparing members' clinical information to standard criteria and guidelines), lack independent discretion and judgment on matters of significance, cannot deny requests on their own, are compensated in the same manner (by salary), and are uniformly classified as exempt. (Pl. Reply Br. at 9-10.)

Plaintiff has made a modest factual showing that acute case managers and concurrent review nurses are similarly situated to prospective and retrospective review nurses and to plaintiffs. Plaintiffs have provided declarations and deposition testimony that raises a reasonable inference that these nurses all perform the basic job function of comparing medical information to guidelines in order to make approval determinations about a requested benefit or service authorization. These nurses do not treat patients and have little interaction with or involvement with patient care beyond making insurance coverage decisions. Their work is largely performed using standardized guidelines that determine the outcome of the nurses' authorization decisions. Moreover, the differences Humana points to do not defeat class certification at this stage in the proceeding. The key differences among these positions appear to be the time at which this review occurs, the type benefit or procedure being reviewed, and the physical location where the review takes place. However, the nurses perform similar functions and do so under a company-wide "role profile" and "assignment profile" dictating their duties, responsibilities, evaluation structure, and pay structure.

For example, Humana points to the fact that the inpatient review nurses manage individuals and interact with them through "member assessments," review a smaller number of cases and are subject to different productivity metrics, and do not work in a call center environment. Humana also explains that, although prospective and retrospective review nurses and acute case managers and

14

concurrent review nurses all hold nursing licenses, only prospective and retrospective review nurses work under a blanket utilization review license obtained by Humana. These nurses all perform similar utilization management functions, and are all uniformly classified as exempt. This is more important in evaluating the merits of conditional certification under § 216(b) than the specific similarities or dissimilarities of the nurses' daily duties. *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010) (finding a common policy or plan to reclassify employees as exempt was "far more important than any similarities or dissimilarities regarding the nuts and bolts of the employees day-to-day duties"); *Betancourt v. Maxim Healthcare Services, Inc.*, 10-C-4763, 2011 WL 1548964, *8 (N.D. Ill. Apr. 21, 2011) (explaining that arguments that "a class should be decertified or that subclasses are necessary because of variations in the job duties and responsibilities" are more appropriately handled after discovery has progressed); *Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2D 845, 848-49 (N.D. Ill. 2008) ("Plaintiffs do not have to show that the potential class members have identical positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay.").

Plaintiffs have presented sufficient evidence to demonstrate that prospective and retrospective review nurses, acute case managers, and concurrent review nurses performed common duties and were subject to a company-wide policy that may have resulted in improperly denying them overtime compensation. Plaintiffs' allegations are supported by three additional putative plaintiffs' declarations and the testimony of Humana's corporate representatives. If the differences between the different nurse's positions prove so significant that their claims cannot be decided as a class, Humana may ask the Court to decertify the class or the class may be divided into subclasses.

15

*Witteman v. Wisconsin Bell, Inc.*, 09-CV-440-VIS, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010). However, such a determination is better suited to the second stage.

Because plaintiffs have made a modest factual showing that they are similarly situated to other putative class members, I conclude that plaintiff's motion for conditional certification will be granted. The collective action will include all current and former "clinical nurse advisors" who primarily performed utilization management functions (prospective reviews, retrospective claims reviews, or inpatient reviews in roles as acute case manager or concurrent review with discharge planning).

**C.     The Notice**

Along with their brief in support of conditional certification, plaintiffs have submitted a proposed notice and consent form. District courts have discretion in appropriate cases to implement the opt-in provision of § 216(b) by facilitating notice to potential plaintiffs. *Hoffman-Laroche*, 493 U.S. at 169. However, "courts must be scrupulous to respect judicial neutrality" and to avoid "even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. Humana does not object to court-authorized notice, but made several objections to plaintiffs' initial proposed notice and consent form. In reply, plaintiffs submitted a revised notice with some of the modifications Humana suggested. Several issues remain disputed, however.

First, Humana notes that plaintiffs' proposed notice does not inform prospective plaintiffs of "the full range of consequences of joining the lawsuit, including being responsible for responding to discovery and potentially liable for defendants' costs if plaintiffs are not successful." (Def. Opp'n Br. at 34.) Plaintiffs argue that such language would only intimidate potential plaintiffs from joining the lawsuit. A number of courts have declined to require representative plaintiffs to include this

16

warning. *See, e.g.*, *Williams v. Cargill Meat Solutions Corp.*, No. 09-C-1006, 2010 WL 2643405, at *2 (E.D. Wis. June 30, 2010) ("Courts should not permit notice to chill participation in a collective action."); *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 608 (W.D. Wis. 2006) ("[C]ourts have declined to require the inclusion of this warning because the statute is silent with respect to fee shifting for prevailing defendants and because the warning would chill participation in collective actions."). The notice adequately informs plaintiffs that they will be bound by any ruling or judgment by the court or by any settlement agreement by the parties, "whether favorable or unfavorable." No further warning is warranted.

Second, Humana added defense counsel's contact information to its proposed notice, to which plaintiffs object. I see no reason to include such information. *See, e.g.*, *DeKeyser*, 2008 WL 5263750, at *6; *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009) (explaining that "such language is both unnecessary and inappropriate); *Cryer v. Intersolutions, Inc.*, CIV.A. 06-2032, 2007 WL 1053214 (D.D.C. Apr. 7, 2007) (denying request to include defense counsel's contact information on class notice because "including additional lawyers only creates the potential for confusion of those who receive the notice").

Third, Humana objects to plaintiffs sending any reminder notice and to posting the notice at Humana's offices. Plaintiffs agree to send notice by U.S. mail only, without requiring Humana to post it at their office locations. However, plaintiffs maintain that a reminder is essential to ensure all potential class members receive judicial notice, read it, and make an informed decision on whether to join the case. However, a reminder is unnecessary and may even be misinterpreted as judicial encouragement to join the lawsuit. *Witteman*, 2010 WL 446033, at *3 ("The purpose of

17

notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit.").

**THEREFORE IT IS ORDERED** that plaintiffs' motion for leave to supplement the record is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for conditional class certification is **GRANTED**. Within 20 days of the date of this order Humana will produce to plaintiffs a computer readable data file containing the name, last known address and telephone number, dates of employment, and social security number (last four digits only) for all current and former "clinical nurse advisors" who primarily performed utilization management functions (prospective reviews, retrospective claims reviews, or inpatient reviews in roles as acute case manager or concurrent review with discharge planning) since November 27, 2009.

**IT IS ALSO ORDERED** that plaintiffs are authorized to give notice of this lawsuit to all current and former "clinical nurse advisors" who primarily performed utilization management functions (prospective reviews, retrospective claims reviews, or inpatient reviews in roles as acute case manager or concurrent review with discharge planning) since November 27, 2009, in the finalized notice form approved by this Court and attached hereto. Such notice may be sent once via first class mail to the conditionally-certified class.

Dated this   27th   day of November, 2012.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court