**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

Diane Schroeder and Rebecca Schroeder,
individually and on behalf of all other
similarly situated individuals,　　　　　　　　　　　　Case No. 12-cv-00137 WCG

　　　　　　Plaintiffs,
v.

Humana Inc. and
Humana Insurance Company,

　　　　　　Defendants.

_____

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF FLSA
SETTLEMENT AND DISMISSAL OF CLAIMS**
_____

**INTRODUCTION**

Following a mediation session with an experienced third-party neutral, and subsequent arm's-length negotiations, Named Plaintiffs Diane Schroeder and Rebecca Schroeder, individually and on behalf of all other similarly situated individuals, and Defendants Humana Inc. and Humana Insurance Company (together "the Parties"), have reached a proposed settlement in the above-captioned case, and now jointly move the Court for approval of their proposed settlement.

Through this joint motion and memorandum, and supporting exhibits, the Parties respectfully request this Court to approve their settlement in this Fair Labor Standards Act ("FLSA") collective action for overtime compensation, and to dismiss this case with prejudice. As detailed below, the Court should grant the Parties' motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' bona fide disputes as to liability and damages

1

under the FLSA.

## DISCUSSION

I.  **SUMMARY OF LITIGATION**

On February 8, 2012, Diane Schroeder and Rebecca Schroeder (the "Named Plaintiffs") filed an FLSA collective action lawsuit against Humana Inc. and Humana Insurance Company (collectively "Defendants" or "Humana"), on behalf of themselves and other "similarly situated" individuals. (ECF No. 1.) The Named Plaintiffs worked as Clinical Nurse Advisors ("CNAs") who perform utilization management functions (prospective reviews, retrospective claims reviews, or inpatient reviews in roles as acute case manager or concurrent review with discharge planning) for Humana. The Complaint alleged that Humana violated the FLSA, 29 U.S.C. § 201 *et seq*., by misclassifying CNAs as "exempt" from the overtime pay requirements of the FLSA and failing to pay them for the overtime hours they worked. (See generally id.) Defendants denied these allegations and asserted affirmative defenses and denied that they violated the FLSA because Plaintiffs and anyone alleged to be similarly situated were properly classified as exempt from the FLSA's overtime requirements. (ECF No. 7.)

On July 3, 2012, the Named Plaintiffs filed their motion for conditional class certification and court-authorized notice pursuant to Section 216(b) of the FLSA. (ECF Nos. 30-33.) Defendants filed their partial opposition to Plaintiffs' motion on August 10, 2012. (ECF No. 36.) Plaintiffs filed their reply on August 29, 2012. (ECF Nos. 38-40.) The Court granted Plaintiffs' motion for conditional certification and court-authorized notice on November 27, 2012, and notice of this lawsuit was subsequently sent to "[c]urrent and former clinical nurse advisors who: (a) were employed by Humana Inc. or Humana Insurance Company between November 27, 2009 and the present, and (b) primarily performed utilization management functions (prospective

2

reviews, retrospective claims reviews, or inpatient reviews in roles as acute case manager or concurrent review with discharge planning)." (ECF Nos. 52 and 52-1.)  On January 3, 2013, Plaintiffs' Counsel mailed court-authorized notice to approximately 1,015 potential opt-in Plaintiffs. (Srey Decl. ¶ 3.)  As a result of the notice, and including the two Named Plaintiffs, a total of 65 individuals employed by Humana as Clinical Nurse Advisors have joined this case by filing consent forms with the Court. (See Dkt. Generally; Srey Decl. ¶ 4.)

In early March 2013, the Parties agreed to pursue private mediation. (Srey Decl. ¶ 5.) The Parties subsequently selected private mediator Allen S. Blair of Harris Shelton Hanover Walsh, PLLC and agreed to schedule the mediation for May 8, 2013. (Id.)  While preparing for mediation, the Parties requested two extensions to the discovery deadline in order focus their time and efforts on preparing for mediation rather than discovery. (ECF Nos. 53, 74.)  This Court granted both extension requests. (ECF Nos. 53, 75.)  Although the May 8, 2013, mediation session was unsuccessful, the Parties continued settlement discussions with Mr. Blair's assistance. (Srey Decl. ¶ 6.)

On May 31, 2013, Plaintiffs filed a motion for leave to amend their Complaint to include certain individual opt-in Plaintiffs as additional named Plaintiffs, and to add state law overtime claims on their behalf. (ECF Nos. 76-79.)  On June 5, 2013, the Parties reached a tentative settlement agreement with Mr. Blair's assistance and notified the Court of their tentative settlement. (ECF No. 80.)

## II. BACKGROUND AND TERMS OF SETTLEMENT

### A. Data Analysis and Mediation

In preparing for mediation, Defendants provided Plaintiffs' Counsel with payroll data for each of the Plaintiffs included in the settlement class.  The payroll data included each Plaintiff's

3

2445096.1
Case 1:12-cv-00137-WCG   Filed 09/10/13   Page 3 of 19   Document 83

dates of employment and bi-weekly earnings. (Srey Decl. ¶ 7.) With this data, Plaintiffs' Counsel conducted a damages analysis for each Plaintiff. Plaintiffs' Counsel considered each Plaintiff's regular wage rate, overtime wage rate, number of weeks worked within the applicable statutory period, and the good-faith estimates of the number of hours worked by the Plaintiffs, and applied the average of that estimate (10 overtime hours per week) to all Plaintiffs. In addition to these factors, damages were analyzed considering other factors including the applicability of the "fluctuating workweek" (or "half-time") overtime calculation method provided for in 29 C.F.R. § 778.114(a), liquidated damages, and willfulness or third year damages. (Id.)

### B. Settlement Amount and Allocation

The Parties engaged in good-faith negotiations to resolve Plaintiffs' claims. With the assistance of Mr. Blair, the Parties ultimately reached an agreement on June 5, 2013, subject to the Court's approval, to resolve the claims of all Plaintiffs included in the settlement class. (Id. ¶ 8.) The agreement was finalized and memorialized in a "Stipulation of Settlement and Release of Claims," (the "Settlement") that was fully executed on July 16, 2013. (See Exhibit 1, the Settlement.)[1] After attorneys' fees, out-of-pocket litigation costs, a contingency fund, and service payments to the two Named Plaintiffs, the remainder of the total settlement amount is to be distributed among the Plaintiffs included in the scope of the settlement class, pursuant to an allocation formula agreed upon by the Parties. (Id.) The formula took into consideration a number of factors, including the Plaintiff's consent filing date, length of employment as a CNA within the FLSA's three-year statute of limitations period, income earned, an average estimate of ten (10) hours of assumed overtime per week, and whether the Plaintiff worked/work in a state

---

[1] Exhibit 1 is being submitted separately from this Memorandum for the Court's review *in camera*.

with a longer statute of limitations period than the FLSA's 3-year period, such as Kentucky. (Ex. 2, Sample Notice of Settlement and Release of Claims Form.) Plaintiffs' Counsel calculated each Plaintiff's estimated overtime compensation due, and then allocated to them their pro rata share. (Id.) The average allocation before attorneys' fees and costs were deducted represented approximately over 80% of Plaintiffs' estimated alleged damages. (Srey Decl. ¶ 7.)

### B. Notice of Settlement and Opportunity to Reject

On July 17, 2013, in accordance with the terms of the Stipulation of Settlement and Release, Plaintiffs' Counsel distributed the Notice of Settlement and Release of Claims Form to all Plaintiffs. (Ex. 2.) The Settlement Notice informed each Plaintiff of the terms of the settlement. (Id.) Specifically, the Notice informed Plaintiffs of Defendants' individual settlement offer to them. (Id.) The Notice also described the various factors considered in determining individual allocations and disclosed the amount of attorneys' fees and out-of-pocket litigation costs Plaintiffs' Counsel will be requesting the Court to approve. (Id.)

The Notice advised each Plaintiff of their option to either accept or reject their individual settlement offer. (Id.) Any Plaintiff who does not wish to take part in the settlement may reject the settlement offer. (Id.) If desired, these Plaintiffs will have the opportunity to pursue their claims on their own and will receive the benefit of consent-based tolling if they re-file their claim within thirty days of the Court's dismissal of this case. (Id.) The Notice also outlined the release of claims that is part of the settlement. (Id.) Finally, the Notice informed Plaintiffs that there may be an approval hearing on this motion and of their right to appear at the hearing. (Id.)

### C. The Release of Claims

In consideration for the settlement payment from Humana, each Plaintiff was required to return a "Release of Claims Form." (Ex. 2.) The Release of Claims Form releases Humana

from:

> [A]ny and all past and present matters, claims, demands, and causes of action for unpaid wages, overtime pay, minimum wages, liquidated damages, penalties, attorneys' fees and costs, and interest under the Fair Labor Standards Act, state law, or common law, which I have or might have, known or unknown, that has arisen or could have arisen at any time from the commencement of employment with Humana up to and including June 5, 2013.

(Id.) If the Court approves of the Settlement, then Defendants will deliver the settlement proceeds to Plaintiffs' Counsel for distribution within twenty (20) business days of the Court's approval of the Settlement. (Id.)

## ARGUMENT

The Parties have reached a settlement agreement, and notice of the settlement has been distributed to the Plaintiffs. The settlement fairly and reasonably resolves the Parties' claims and defenses and the Court should enter an order approving the settlement.

### I. JURISDICTION & VENUE

This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants, and venue is proper. An FLSA action shall be brought in a federal or state court of competent jurisdiction. 29 U.S.C. § 216(b). This action was filed in the United States District Court for the Eastern District of Wisconsin pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331, for claims arising under the FLSA, 29 U.S.C. § 201 *et seq*. Venue was appropriate in this District.

### II. THE PROPOSED SETTLEMENT APPROPRIATELY RESOLVES THE PARTIES' CLAIMS AND DEFENSES

#### A. Standard for Approval of Settlement of FLSA Collective Actions

FLSA claims may only be compromised by the DOL or through a judicially approved stipulated settlement. See D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 116 (1946); Brooklyn

Savings Bank v. O'Neil, 324 U.S. 697 (1945); Walton v. United Consumers Club, Inc., 786 F.3d 303, 305–07 (7th Cir. 1986) (holding that courts have "refused to enforce wholly private settlements" under the FLSA). "Under the FLSA, employees can only bargain, waive, or modify their recovery and rights in narrow circumstances." Brask v. Heartland Auto. Servs., Inc., 2006 WL 2524212, at *2 (D. Minn. Aug. 15, 2006) (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)). "In a private action between the employer and employee, a settlement falls within those narrow circumstances only if the parties agree on the terms, the court approves the settlement as 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions,' and the settlement is entered as stipulated judgment." Brask, 2006 WL 2524212, at *1 (citing Lynn's Foods Stores, 679 F.2d at 1353, 1355).

In order to approve a proposed settlement under the FLSA, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355. The primary focus of the Court's inquiry when determining whether to approve a FLSA collective action settlement is not on due process concerns, as it would be for a Rule 23 class action.[2] Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (citing Woods v. New York Life Ins. Co., 686 F.2d 578, 579–80 (7th Cir. 1982)). Instead, the Court's primary focus is on ensuring that an employer does not take advantage of its employees. Id. (citing Lynn's Food Stores, 679 F.2d at 1354). "[A] court must approve a settlement of claims under the FLSA even if there is only one plaintiff, where analogy to Rule 23 would have limited usefulness." Id. (citations omitted).

---

[2] In contrast to a Rule 23 class action, "only those plaintiffs who expressly join the collective action are bound by its results." McElmurry v. U.S. Bank, N.A., 495 F.3d 1136, 1138 (9th Cir. 2007). "[N]on-parties to a collective action are not subject to claim preclusion . . . ." Id.; see also McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions).

To determine the fairness of a settlement under the FLSA, "the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990, 994–95 (N.D. Ind. 2010) (citing Misiewicz v. D'Onofrio Gen. Contractors, 2010 WL 2545439, at *3 (E.D.N.Y. May 17, 2010)). To make this determination, courts may consider the following factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

Burkholder, 750 F. Supp. 2d at 995.

"Normally, a settlement is approved where it is the result of 'contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" Id. Furthermore, as a general rule, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." Houston v. URS Corp., 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009).

### B. The Proposed Settlement Is Fair, Reasonable, and Adequate

#### 1. A *Bona Fide* Dispute Exists Between the Parties

A *bona fide* dispute exists "when an employee makes a claim that he or she is entitled to

8
2445096.1
Case 1:12-cv-00137-WCG   Filed 09/10/13   Page 8 of 19   Document 83

overtime payment," and when settlement requires resolution of the overtime payment due. Id. at *9. In determining whether a *bona fide* dispute exists, a court must "ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." See Collins, 568 F. Supp. 2d at 719. A court's settlement approval, however, "must not be turned into a trial or a rehearsal of the trial." Brask, 2006 WL 2524212, at *2 (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974)).

A *bona fide* dispute clearly exists in this case. Plaintiff and other similarly situated CNAs claim that Defendants misclassified them as exempt from the FLSA. Defendants deny that they violated the FLSA or any other law in any manner and specifically deny that the CNAs are owed any overtime under the FLSA. Although both parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expenses associated with full-blown litigation and discovery, and the uncertainty of dispositive motion practice and trial, the parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendants to Plaintiffs, in exchange for releases of claims by Plaintiffs in order to avoid the time and expense inherent in continued litigation. See Lynn's Food Stores, Inc., 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### 2. The Settlement Was the Product of Good Faith, Arms-Length Negotiations by Experienced Counsel

This Court may presume no fraud or collusion occurred between counsel absent evidence to the contrary. See Collins, 568 F. Supp. 2d at 720, 725 (citing Cotton v. Hinton, 559 F.2d

9

2445096.1
Case 1:12-cv-00137-WCG   Filed 09/10/13   Page 9 of 19   Document 83

1326, 1331 (5th Cir. 1977)). No such evidence exists here. The settlement was reached as a result of arms-lengths negotiations between the Parties through participation by experienced counsel in a mediation session with a qualified mediator, Allen Blair. (See Srey Decl. ¶ 8.)

Plaintiffs' Counsel has significant experience to assess the risks of continued litigation and benefits of settlement. See Moore, 2009 WL 2848858, at *3. Plaintiffs' Counsel has a long-standing national wage and hour class and collective action practice representing employees in claims against employers similar to the claims asserted in this case. (Srey Decl. ¶ 9; See generally http://www.nka.com/ (Plaintiffs' Counsel's website)); see also Houston, 2009 WL 2474055, at *7. Defense counsel is likewise experienced in defending similar claims. Counsel for both parties have advised their respective clients regarding the settlement, and they have recommended judicial approval thereof; this Court should afford that recommendation some weight.

### 3. This Case Advanced to a Stage at Which the Risks of Continued Litigation Could Be Evaluated

Before agreeing to mediate the case, the Parties had conducted months of protracted litigation, taking and defending several depositions, and completing their briefing on the conditional certification issue. Without question, if the case would not have settled, the parties would have spent significant additional time and resources completing written and deposition discovery, including depositions of representative sample Plaintiffs and additional management witnesses. Thereafter, because this Court had granted Plaintiffs' conditional certification, the Parties would have likely litigated the issue of decertification and filed dispositive summary judgment motions.

In short, the proceedings had advanced to a stage sufficient to permit the parties and their counsel to collect, obtain, and review evidence, evaluate their claims and defenses, assess their

10

2445096.1
Case 1:12-cv-00137-WCG   Filed 09/10/13   Page 10 of 19   Document 83

witnesses, understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing toward additional formal discovery, decertification and dispositive motion practice, would be a difficult, costly and uncertain undertaking. Based on that analysis, the parties believe that settlement on the terms set forth in the Settlement is in their best interests.

### 4. 100% Percent of the Plaintiffs Have Accepted the Settlement

Finally, as discussed above, each Plaintiff in the settlement class was notified of this settlement. The reaction of the Plaintiffs to the settlement also supports a finding that the settlement is fair and reasonable. Of the 65 Plaintiffs included within the scope of the settlement, all 65 have approved the settlement and executed and returned a Release of Claims Form. (Srey Decl. ¶ 10.) The 100% approval rate of the Plaintiffs further confirms the reasonableness of the settlement.

The Court should approve the settlement because the payments to Plaintiffs are significant. The total settlement amount represents over 80% of Plaintiffs' alleged damages before attorneys' fees and costs, and assuming a good-faith estimate of ten overtime hours per week, and a half-time multiplier. (Srey Decl. ¶ 7.) The settlement is fair, reasonable, and adequate for Plaintiffs and should therefore be approved.

## III. PLAINTIFFS' COUNSEL'S REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE FULLY AWARDED

In connection with this motion, Plaintiffs respectfully move this Court for an order approving as reasonable, Plaintiffs' Counsel's request for attorneys' fees and out-of-pocket litigation costs.

The FLSA provides: "the court in such actions shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and

costs of the action." 29 U.S.C. §216(b). The purpose of the fee provision in § 216(b) is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 502 (6th Cir. 1984).

An attorneys' fee award must be reasonable. Garcia v. R.J.B. Properties, Inc., 756 F.Supp.2d 911 (N.D. Ill. July 19, 2010). What constitutes a reasonable fee is within the sound discretion of the district court. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The amount of fees that constitutes a reasonable attorneys' fee "must be determined on the facts of each case." Ford v. Tennessee Senate, 2008 WL 4724371, at *5 (W.D. Tenn. Oct. 24, 2008) (citing Hensley, 461 U.S. at 429). A fee is reasonable if it is adequately compensatory to attract competent counsel, but does not produce a windfall for attorneys. Kritzer v. Safelite Solutions, LLC, 2012 WL 1945144, at *9 (S.D. Ohio May 20, 2012) (citing Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 897(1984)). Here, the Parties' Settlement provides for Plaintiffs' Counsel to seek the Court's award of one-third of the settlement amount for reasonable attorneys' fees and out-of-pocket litigation costs. (Ex. 1.) Plaintiffs' Counsel requests this Court approve their requested attorneys' fees. This amount is reasonable for several reasons.

First, these fees are fair and reasonable in light of the significant results Plaintiffs' Counsel achieved for the Plaintiffs. Assuming that the half-time overtime multiplier would apply, the total settlement represents over 80% of Plaintiffs' alleged damages based on an assumed 50-hour workweek every week, before attorneys' fees and costs are deducted. This result was achieved shortly after the notice period without much discovery or effort from the

Plaintiffs because of Plaintiffs' Counsel's efforts and reputation as aggressive FLSA litigators. In fact, only the two Named Plaintiffs were required to provide deposition testimony in this case.

Second, the total requested attorneys' fees represents one-third percentage of the total settlement amount in a contingency fee arrangement between Plaintiffs and Plaintiffs' Counsel. Plaintiffs' Counsel took this case on a contingency basis and has legal services agreements with the Named Plaintiffs and many of the opt-in Plaintiffs. (Srey Decl. ¶ 11.) Those legal services agreements expressly provide for payment of attorneys' fees to counsel in the amount of one-third of any settlement. (Id.) The Court should honor these private agreements and approve the payment of attorneys' fees on a contingency basis. See Burkholder, 750 F. Supp. 2d at 997 (noting that one-third is "comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA action"); Kritzer, 2012 WL 1945144, at *9 (finding the existence of a contingency fee agreement was a factor that "cuts significantly in favor of awarding [plaintiffs' counsel] a significant fee recovery"); Scott v. Memory Co., LLC, 2010 WL 4683621 (M.D. Ala. Nov. 10, 2010) (settlement approved with attorneys' fees paid according to plaintiff's contingency agreement with his attorney); see also In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees.").

Because of this contingency fee arrangement, Plaintiffs' Counsel have not received any payment for their time spent litigating the case, nor have they received reimbursement for their out of pocket costs during the litigation. Plaintiffs' Counsel alone undertook the financial risk of potentially unsuccessful litigation. (Srey Decl. ¶ 11.) Plaintiffs' Counsel litigated this case aggressively and effectively, which resulted in substantial monetary relief for Plaintiffs. They took multiple depositions of Defendants' corporate witnesses, gathered the necessary

information regarding the merits of Plaintiffs' claims and Defendants' defenses to pursue mediation after the notice period, interviewed each Plaintiff that joined the case, and conducted a detailed damages analysis for each Plaintiff. Moreover, the Notice of Settlement advised each Plaintiff of Plaintiffs' Counsel's one-third fee arrangement with Plaintiffs. (Ex. 2.) No Plaintiff objected to the terms of the settlement providing for Plaintiffs' Counsel to receive one-third of the total settlement amount. This too should weigh in favor of the reasonableness of the requested attorneys' fees.

Third, the one-third of the settlement amount requested here is within the range typically awarded by district courts in wage and hour cases. See, e.g., Wittemann v. Wisconsin Bell, Inc., No. 09-00440 (W.D. Wis. Mar. 11, 2011) (approving attorneys' fees totaling 33 1/3 of the total settlement overtime misclassification case);[3] Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (finding 33.3% of the total settlement amount is reasonable in an FLSA action); Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057, 1064-5 (D. Minn. 2010) (collecting cases and granting award of 33%); Faican v. Rapid Park Holding Corp., 2010 WL 2679903 (E.D.N.Y. July 1, 2010) (approving fee award of 33 1/3 percent in an FLSA action); Clark v. Ecolab, Inc., 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (approving attorneys' fees of one-third of the settlement fund in FLSA overtime case).

Finally, Plaintiffs' Counsel's request for attorneys' fees is also reasonable under a lodestar crosscheck.[4] See Sanderson v. Unilever Supply Chain, Inc., 2011 WL 6369395, at *2

---

[3] A copy of the Wittemann Order is attached as Exhibit 3.

[4] Plaintiffs' Counsel's billing records are attached hereto as Exhibit 4 to Srey Decl. In addition to the attorneys' fees and costs outlined in Exhibits 4 and 5, Plaintiffs' Counsel will continue to expend time, resources, and costs representing Plaintiffs. For example, Plaintiffs' Counsel will continue to communicate with and respond to Plaintiffs' questions throughout the settlement process, administer the settlement check mailing to Plaintiffs, travel to and attend the settlement approval hearing, and ensure that the settlement agreement is carried out according to its terms.

14

(W.D. Mo. Dec. 19, 2011) (applying the percentage of the fund method and cross-checking the lodestar to determine reasonableness of attorneys' fees); Heath v. Hard Rock Cafe Int'l (STP), Inc., 2011 WL 5877506, at *3 (M.D. Fla. Oct. 28, 2011) (approving one-third of settlement amount for attorneys' fees after cross-checking plaintiffs' counsel's lodestar); Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) (performing a lodestar crosscheck and finding that the plaintiffs' counsel's fee request of 1.88 times the lodestar was "quite reasonable" considering the risk assumed by class counsel and the level of skill they bring to complex litigation).

Plaintiffs' Counsel has significant FLSA experience, particularly in misclassification cases such as this. Ms. Srey is partner at Nichols Kaster, PLLP ("Nichols Kaster"), one of the premier wage and hour law firms in the country. (Srey Decl. ¶¶ 1, 12; Ex. 6.)[5] Ms. Srey has been licensed and has worked for Nichols Kaster since 2004. (Id. ¶ 12.) Since that time, her practice has focused primarily on large wage and hour class and collective action cases. (Id.) She has tried two FLSA collective actions to verdict, one of which resulted in a $3.8 million judgment against the employer. (Id. ¶ 13.) Ms. Srey has handled dozens of wage and hour cases during her legal career, is a frequent speaker nationally and locally on wage and hour topics, and has authored several written materials on wage and hour issues. (Id. ¶¶ 13, 14.) Awarding Plaintiffs' Counsel the requested attorneys' fees amount is appropriate in light of Plaintiffs' Counsel's skill and diligent effort in reaching a favorable settlement relatively early in the litigation and with little effort from the Plaintiffs other than the two Named Plaintiffs.

In addition to the attorneys' fees, Plaintiffs' Counsel also seek reimbursement for out-of-

---

To the extent that the Court's award of costs exceeds Plaintiffs' Counsel's actual out-of-pocket litigation costs, such excess will be reallocated to the Plaintiffs on a pro rata basis.
[5] Exhibit 6 is Nichols Kaster, PLLP's firm's resume.

pocket costs incurred in litigation expenses, which counsel advanced with the risk of no recovery. (Id. ¶ 11.) Those costs include photocopies, filing fees, research charges, travel costs, mediation fees, case advertising, and correspondence with clients. (Ex. 5.) Plaintiffs' Counsel's private agreements with Plaintiffs provide for reimbursement of costs in addition to payment of attorneys' fees. (Srey Decl. ¶ 11.) Plaintiffs' Counsel incurred these costs on behalf of Plaintiffs, and pursuant to the legal services agreement. The Court should honor Plaintiffs' Counsel's private agreements with its clients and approve the reimbursement of Plaintiffs' Counsel's out-of-pocket litigation costs through this settlement.

Defendants do not oppose either the attorneys' fees or out-of-pocket costs request. For all the reasons stated herein, this Court should approve the requested attorneys' fees and costs as reasonable.

## IV. THE COURT SHOULD APPROVE A SERVICE PAYMENT TO NAMED PLAINTIFFS DIANE SCHROEDER AND REBECCA SCHROEDER IN RECOGNITION OF THEIR TIME AND EFFORT

Under the terms of the Parties' settlement agreement, in addition to their individualized allocation from the maximum payment amount Defendants agreed to pay to the Plaintiffs included in the scope of the settlement, and subject to Court approval, the Named Plaintiffs will receive an additional award in recognition of their services as a Named Plaintiffs.

Courts have approved incentive payments if they are fair and reasonable. See Risch v. Natoli Engineering Co., LLC, 2012 WL 3242099, at *3 (E.D. Mo. Aug. 7, 2012) (finding fair and reasonable $5,000.00 incentive payment to named plaintiffs in wage and hour class and collective action); Wittemann, No. 09-00440 (W.D. Wis. Mar. 11, 2011) (approving $10,000 service payments to named plaintiffs); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (awarding an incentive award of $15,000 to each named plaintiff

in the settlement of their FLSA overtime claim); Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving $10,000 recognition payments to two named plaintiffs in an FLSA and Rule 23 settlement because such payments were fair and reasonable under the circumstances); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing that recognition payments are "particularly appropriate in the employment context" when the named plaintiff is a "former or current employee of the defendant . . . by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

This incentive award is fair and reasonable and should be awarded. First, the Named Plaintiffs' efforts in bringing this lawsuit and assisting Plaintiffs' Counsel with the investigation of Plaintiffs' claims and the litigation conferred a substantial benefit on the Plaintiffs. Second, both Plaintiffs provided valuable information relating to the CNAs' misclassification claims and defenses in this case. The two Named Plaintiffs also sat for day-long depositions, and were the only Plaintiffs deposed in the case. Third, the service payment amount requested is consistent with service payments approved by other courts. Fourth, this payment not only recognizes the Named Plaintiffs' time and effort and risks taken, but also advances public policy by encouraging other individuals to come forward and protect the rights of others in representative actions such as this one. See Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) (awarding $5,000 incentive payment to each named plaintiff and stating, "Small incentive awards, which serve as premiums to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.").

Due to the Named Plaintiffs' efforts and assistance in settling this matter, as well as the

amount being requested as an award, the Court should grant the two Named Plaintiffs the requested incentive awards.

## CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel that has resolved a *bona fide* dispute over overtime wages. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court approve the Parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above. Further, Plaintiffs' Counsel request that this Court award as reasonable the attorneys' fees and litigation costs in the amount requested. Finally the Parties jointly request that this action be dismissed with prejudice.

Date: September 10, 2013

Respectfully Submitted,

s/Rachhana T. Srey
Nichols Kaster, PLLP
Rachhana T. Srey, MN Bar No. 340133
Paul J. Lukas, MN Bar No. 22084X
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
srey@nka.com
lukas@nka.com

ATTORNEYS FOR PLAINTIFFS

s/James M. Coleman
James M. Coleman
Maureen R. Knight
Constangy, Brooks & Smith, LLP
12500 Fair Lakes Circle
Suite 300

18

Fairfax, VA 22033
Telephone: 571-522-6100
Facsimile: 571-522-6101
jcoleman@constangy.com
mknight@constangy.com

Elizabeth A. Erickson, WI Bar No. 1036729
Tony H. McGrath, WI Bar No. 1042806
Constangy, Brooks & Smith, LLP
1 South Pinckney Street
Suite 930
Madison, WI 53703
Telephone: 608-807-5272 (EAE Direct)
Facsimile: 608-807-5287 (EAE Direct Fax)
eerickson@constangy.com
tmcgrath@constangy.com

ATTORNEYS FOR DEFENDANTS